1
2
3
4
5
6
7
8
9
10

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROETTGEN,<br>CDCR # V-05142,<br><br>                                        Plaintiff,<br><br>                    vs.<br><br>ERIC ARNOLD, et al.,<br><br>                                        Defendants. | Civil No.    11-2562 IEG (NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING MOTION TO APPLY CAL. CODE CIV. P. § 352.1; AND**<br><br>**(2)  DISMISSING FIRST AMENDED COMPLAINT FOR FAILING TO STATE A CLAIM PURSUANT TO 28 U.S.C. §§ 1915(e)(2)(B) & 1915A(b)** |

## I.    PROCEDURAL HISTORY

On November 3, 2011, Plaintiff, a state inmate currently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"), California, and proceeding pro se, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983.  In addition, Plaintiff filed a Motion to Proceed *In Forma* Pauperis (IFP) pursuant to 28 U.S.C. § 1915(a) [ECF No. 2].   On December 6, 2011, this Court granted Plaintiff's Motion to Proceed IFP but simultaneously dismissed his Complaint for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and for lack of proper venue. (ECF No. 3.)

11cv2562 IEG (NLS)

1    Plaintiff was granted leave to file an Amended Complaint in order to correct the

2    deficiencies of pleading identified by the Court.  (*Id.*)  On July 6, 2012, after receiving an

3    extension of time, Plaintiff filed his First Amended Complaint ("FAC").  (ECF No. 14.)  In

4    addition, Plaintiff has filed a "Motion to Apply Cal. Code P. Sec. 352.1."  (ECF No. 16.)

5    **II.    MOTION FOR TOLLING**

6    Plaintiff's claims in his FAC begin with events that occurred in August of 2008.  Plaintiff

7    filed this action in 2011, well within the applicable statute of limitations period.  Because section

8    1983 contains no specific statute of limitation, federal courts apply the forum state's statute of

9    limitations for personal injury actions.  *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004);

10   *Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004); *Fink v. Shedler*, 192 F.3d 911, 914 (9th

11   Cir. 1999).  California's statute of limitations is two years.  *Jones*, 393 F.3d at 927 (citing CAL.

12   CIV. PROC. CODE § 335.1).  In addition, Plaintiff has alleged that he has been incarcerated since

13   2003 and thus, he is entitled to an additional two years of tolling.  CAL. CODE CIV. P. § 352.1

14   (tolling statute of limitations "for a maximum of 2 years" during a prisoner's incarceration).

15   Accordingly, Plaintiff had four years from August of 2008 to file this action and in fact, he filed

16   it well within this time frame Thus, Plaintiff's Motion is GRANTED but his First Amended

17   Complaint will be dismissed for reasons other than timeliness as set forth below.

18   **II.    SCREENING PURSUANT TO 28 U.S.C. §§ 1915(e)(2) & 1915A(b)**

19   As the Court stated in its previous Order, the Prison Litigation Reform Act ("PLRA")'s

20   amendments to 28 U.S.C. § 1915 obligates the Court to review complaints filed by all persons

21   proceeding IFP and by those, like Plaintiff, who are "incarcerated or detained in any facility

22   [and] accused of, sentenced for, or adjudicated delinquent for, violations of criminal law or the

23   terms or conditions of parole, probation, pretrial release, or diversionary program," "as soon as

24   practicable after docketing."  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Under these

25   provisions, the Court must sua sponte dismiss any prisoner civil action and all other IFP

26   complaints, or any portions thereof, which are frivolous, malicious, fail to state a claim, or which

27   seek damages from defendants who are immune.  *See* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A;

28   *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (§ 1915(e)(2)); *Resnick v.*

1  *Hayes*, 213 F.3d 443, 446 n.1 (9th Cir. 2000) (§ 1915A).

2  **1.   Count 1**

3  Plaintiff alleges that on "August 8, 2008, Plaintiff was raped by his cellmate." (FAC at

4  7.) Plaintiff was admitted to the psychiatric unit the next day but he did not tell prison officials

5  that he had been sexually assaulted. Instead, he was "satisfied to process this issue as merely

6  an in-cell assault." (*Id.*) Plaintiff alleges that Defendant Sztukowski was responsible for

7  "properly investigating and reporting Plaintiff's claims." Plaintiff claims Defendant Sztukowski

8  failed to properly investigate the claims but did note in his report that Plaintiff and his cellmate

9  should be designated as "enemies." (*Id.*) As a result of the alleged failure to properly report

10  the incident by Sztukowski, Plaintiff claims that he was ordered to return to the cell where he

11  had been assaulted. (*Id.* at 8.) Plaintiff was issued a rules violation report because he refused

12  to "house with his assailant." (*Id.*)

13  Several days later on August 15, 2008, Plaintiff claims he told Defendant F. Martinez,

14  a Lieutenant handing a different rules violation report, that he had been assaulted by his cellmate

15  on August 8th. (*Id.*) However, Plaintiff claims Defendant Martinez "failed to follow up with

16  a proper investigation insuring the incident was properly documented." (*Id.*) Plaintiff's rule

17  violation report for the incident in which he refused to be housed with his cellmate and alleged

18  assailant was conducted on September 11, 2007 by Defendant C. Munoz. (*Id.*) Plaintiff claims

19  that Munoz "refused to order the matter to be investigated and properly documented." (*Id.*)

20  Prison officials have a duty to take reasonable steps to protect inmates from physical

21  abuse. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). To establish a violation of this duty, the

22  prisoner must establish that prison officials were "deliberately indifferent" to serious threats to

23  the inmate's safety. *See Farmer*, 511 U.S. at 834. To demonstrate a prison official was

24  deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the

25  official [knew] of and disregard[ed]] an excessive risk to inmate. . . safety; the official must both

26  be aware of facts from which the inference could be drawn that a substantial risk of serious harm

27  exists, and [the official] must also draw the inference." *Id.*, at 837. To prove knowledge of the

28  risk, however, the prisoner may rely on circumstantial evidence; in fact, the very obviousness

1   of the risk may be sufficient to establish knowledge.  *See Farmer*, 511 at 842.

2        While Plaintiff has alleged some serious allegations, he simply has not provided enough

3   facts from which the Court can determine whether he has stated an Eighth Amendment claim.

4   Plaintiff admits that he failed to tell prison officials the serious nature of the alleged assault.  (*See*

5   FAC at 7-8.)  In order for the Court to find "deliberate indifference," Plaintiff has to show that

6   the named Defendants "[knew] of and disregard[ed]] an excessive risk to inmate. . . safety."  *See*

7   *Farmer*, 511 U.S. at 837.  Plaintiff does not allege any facts to demonstrate that the Defendants

8   knew that he would be assaulted by his cellmate.  He later claims that he did tell Defendant

9   Martinez of the assault but it is not clear precisely what Plaintiff told Martinez.  Moreover, it is

10  not clear that Plaintiff was ever housed with his cellmate after the alleged assault occurred.

11  Plaintiff does not allege any specific facts to show that Defendants knew of an excessive risk to

12  his safety either prior to August 8, 2008 or anytime thereafter.

13       Accordingly, Plaintiff's Eighth Amendment Failure to Protect claims found in Count "1"

14  are dismissed for failing to state a claim upon which § 1983 relief can be granted.

15       Plaintiff also alleges that his due process rights under the Fourteenth Amendment have

16  been violated.  (*See* FAC at 7.)  It appears, although not entirely clear, that these claims arise

17  from Plaintiff's allegations that he was denied due process during his rules violation hearings.

18  (*Id.* at 9.)   "The requirements of procedural due process apply only to the deprivation of

19  interests encompassed by the Fourteenth Amendment's protection of liberty and property."

20  *Board of Regents v. Roth*, 408 U.S. 564, 569 (1972).  State statutes and prison regulations may

21  grant prisoners liberty interests sufficient to invoke due process protections.  *Meachum v. Fano*,

22  427 U.S. 215, 223-27 (1976).   However, the Supreme Court has significantly limited the

23  instances in which due process can be invoked.  Pursuant to *Sandin v. Conner*,  515 U.S. 472,

24  483 (1995), a prisoner can show a liberty interest under the Due Process Clause of the

25  Fourteenth Amendment only if he alleges a change in confinement that imposes an "atypical and

26  significant hardship . . . in relation to the ordinary incidents of prison life."  *Id.* at 484 (citations

27  omitted); *Neal v. Shimoda*, 131 F.3d 818, 827-28 (9th Cir. 1997).

28  / / /

In this case, Plaintiff has failed to establish a liberty interest protected by the Constitution because he has not alleged, as he must under *Sandin*, facts related to the conditions or consequences of his placement in Ad-Seg which show "the type of atypical, significant deprivation [that] might conceivably create a liberty interest." *Id.* at 486. For example, in *Sandin*, the Supreme Court considered three factors in determining whether the plaintiff possessed a liberty interest in avoiding disciplinary segregation: (1) the disciplinary versus discretionary nature of the segregation; (2) the restricted conditions of the prisoner's confinement and whether they amounted to a "major disruption in his environment" when compared to those shared by prisoners in the general population; and (3) the possibility of whether the prisoner's sentence was lengthened by his restricted custody. *Id.* at 486-87.

Therefore, to establish a due process violation, Plaintiff must first show the deprivation imposed an atypical and significant hardship on him in relation to the ordinary incidents of prison life. *Sandin*, 515 U.S. at 483-84. Plaintiff has failed to allege any facts from which the Court could find there were atypical and significant hardships imposed upon him as a result of the Defendants' actions. Plaintiff must allege "a dramatic departure from the basic conditions" of his confinement that would give rise to a liberty interest before he can claim a violation of due process. *Id.* at 485; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998). He has not; therefore the Court finds that Plaintiff has failed to allege a liberty interest, and thus, has failed to state a due process claim. *See May*, 109 F.3d at 565; *Hewitt*, 459 U.S. at 466; *Sandin*, 515 U.S. at 486.

Accordingly, Plaintiff's Fourteenth Amendment due process claims found in Count "2" are dismissed for failing to state a claim upon which § 1983 relief could be granted.

### 2.     Count 2

Plaintiff claims that the Institutional Classification Committee ("ICC") met on August 22, 2008 to discuss Plaintiff's classification. (*See* FAC at 10.) Plaintiff was not present which he claims is a violation of his due process rights. However, as stated above, the Supreme Court has significantly limited the instances in which due process can be invoked. Pursuant to *Sandin*, a prisoner can show a liberty interest under the Due Process Clause of the Fourteenth

Amendment only if he alleges a change in confinement that imposes an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Id.* at 484 (citations omitted). Plaintiff alleges no facts to demonstrate how the decisions made with regard to his classification resulted in an "atypical and significant hardship."

Accordingly, Plaintiff's Fourteenth Amendment due process claims in Count "2" are dismissed for failing to state a claim upon which § 1983 relief may be granted.

Plaintiff also claims, without any supporting facts, that his right to equal protection of the laws pursuant to the Fourteenth Amendment have been violated. The "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Center, Inc.* 473 U.S. 432, 439 (1985). In order to state a claim under § 1983 alleging violations of the equal protection clause of the Fourteenth Amendment, Plaintiff must allege facts which demonstrate that he is a member of a protected class. *See Harris v. McRae*, 448 U.S. 297, 323 (1980) (indigents); *see also City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440-41 (1985) (listing suspect classes). In this matter, Plaintiff has not sufficiently plead that he is a member of a protected class nor has he plead any facts to demonstrate that Defendants acted with an intent or purpose to discriminate against him based upon his membership in a protected class. *See Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), *cert. denied*, 525 U.S. 1154 (1999). Moreover, Plaintiff has also failed to allege sufficient facts which may prove invidious discriminatory intent. *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 265 (1977).

Accordingly, Plaintiff's Fourteenth Amendment equal protection claims in Count "2" are dismissed for failing to state a claim upon which relief may be granted.

### 3.    Count 3

In October of 2008, Defendant Chief Deputy Warden Davis directed Defendant Sumaya to "investigate Plaintiff's safety concerns." (FAC at 11.) Defendant Sumaya prepared a report in which he stated "in my opinion, there may indeed be some validity to Roettgen's safety

1 concerns." (*Id.*)   Plaintiff alleges that the report recommended that he be placed in an
2 "Indeterminate Security Housing Unit" which Plaintiff claims is for inmates that have far more
3 disciplinary violations than Plaintiff. (*Id.*)

4 Plaintiff lists a number of constitutional violations that he claims arise from these factual
5 allegations.  He alleges that Defendants Sumaya and Davis were deliberately indifferent "to
6 Plaintiff's need to be free of harm; failure to protect; cruel and unusual punishment; conspiracy
7 to act in concert." (*Id.*)  Plaintiff alleges no facts to support an Eighth Amendment claim.  He
8 acknowledges that the Chief Deputy Warden took his allegations seriously and requested an
9 investigation at which time Defendant Sumaya allegedly confirmed some of Plaintiff's safety
10 concerns.   In order to state an Eighth Amendment claim, the Plaintiff has to allege facts to
11 support a claim of deliberate indifference by showing that Defendants [knew] of and
12 disregard[ed]] an excessive risk to inmate. . . safety." *Farmer*, 511 U.S. at 837.  Plaintiff's own
13 allegations show that the Defendants acknowledged the risk to Plaintiff's safety and proposed
14 housing him in segregated housing.  Plaintiff has provided no facts to support an Eighth
15 Amendment claim.

16 To the extent that Plaintiff is attempting to plead a conspiracy under section 1983, he
17 must allege "'an agreement or meeting of the minds to violate constitutional rights,'" *Franklin*
18 *v. Fox*, 312 F.3d 423, 441 (9th Cir.2001) (quoting *United Steel Workers of Am. v. Phelps Dodge*
19 *Corp.,* 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of
20 constitutional rights.  *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting *Woodrum v.*
21 *Woodward County, Oklahoma*, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each
22 participant in the conspiracy need not know the exact details of the plan, but each participant
23 must at least share the common objective of the conspiracy.'"  *Franklin*, 312 F.3d at 441
24 (quoting *United Steel Workers*, 865 F.2d at 1541).  Conclusory allegations of conspiracy as
25 Plaintiff has alleged, here, however, are insufficient to support a claim under section 1983.  *See*
26 *Aldabe v. Aldabe*,  616 F.2d 1089, 1092 (9th Cir. 1980).
27 / / /
28 / / /

### 4.    Count 4

Plaintiff alleges that he received additional classification hearings in order to review these past reports, along with allowing him to present to the ICC his safety concerns.  (*See* FAC at 13.)  Plaintiff claims that Defendants continued to fail to document his safety concerns in his file.  (*Id.* at 13-14.)  Instead, Plaintiff alleges that the classification committee officers were "biased" against him and presented a case for Plaintiff being housed in the indeterminate security housing unit.  (*Id.*)

Again, Plaintiff lists a variety of constitutional violations which he claims arise from the set of facts alleged.  However, there is no clear Eighth Amendment claim.  Plaintiff fails to provide sufficient facts that any of the named Defendants were deliberately indifferent to a serious risk to his safety.  Repeatedly throughout his First Amended Complaint, Plaintiff alleges that all the named Defendants failed to address his safety concerns, yet he only refers to an assault that happened in 2008.  From that incident, Plaintiff's alleged assailant was noted as an "enemy" of Plaintiff.   Other than alleging that the reports prepared by Defendants were incomplete, he does not allege any actions on the part of the Defendants that deliberately put Plaintiff at risk to his safety.

He must allege more specific facts that would describe the nature of his claim that Defendants "[knew] of and disregard[ed]] an excessive risk to inmate. . . safety." *See Farmer*, 511 U.S. at 837.

### 5.    Count 5

Here, Plaintiff alleges that Defendants Comaites, Azevedo and Johnson "relied upon a report they knew to be wrong in order to return Plaintiff to double-cell resulting in another in-cell assault being committed on Plaintiff."  (*See* FAC at 17.)

Ultimately what Plaintiff is alleging may rise to the level of stating an Eighth Amendment claim, but these factual allegations as currently pled are insufficient to state an Eighth Amendment claim.  Mere double celling alone would not necessarily constitute deliberate indifference.  Plaintiff would have to allege facts sufficient to show that these Defendants knew that Plaintiff was at risk of serious physical injury.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

### 6.     Count 6

Plaintiff alleges that when he was transferred to the Richard J. Donovan Correctional Facility ("RJD"), correctional officers staged "gladiator fights" between Plaintiff and other prisoners.  (FAC at 19.)  Plaintiff alleges that he refused to be housed with another inmate, Cooper.  (*Id.*).  Plaintiff offers no facts as to why he refused to be housed with this inmate. Defendant Ives instructed Defendants Scharr and Navarro to physically carry Plaintiff to his cell. (*Id.*)  Plaintiff claims he "tried to passively resist" being held in the same cell as inmate Cooper but ultimately he had "no other option but to swing on the other inmate."  (*Id.*)

Again, there are no facts that support a claim that Plaintiff was at risk of serious physical harm.  There are no facts explaining why he was forced to start the fight with the other inmate. He has no facts alleging why being housed with this other inmate was a safety issue for Plaintiff. In addition, Plaintiff's allegations against the classification committee for housing him in a double cell fails to state a claim.  Plaintiff does not have a constitutional right to be housed at a particular institution or to receive a particular security classification.  *See Olim v. Wakinekona,* 461 U.S. 238, 244-50 (1983); *Meachum v. Fano,* 427 U.S. 215, 224 (1976); *Moody v. Daggett,* 429 U.S. 78, 87 n.9 (1976).

Plaintiff's claims that he was denied forty-nine (49) meals over an unknown length of time may be sufficient to state an Eighth Amendment claim. To state a claim for cruel and unusual punishment, however, Plaintiff must allege facts sufficient to show that the conditions of his confinement subjected him to "unquestioned and serious deprivations of basic human needs." *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *Wilson v. Seiter,* 501 U.S. 294, 298-300 (1991).  The Eighth Amendment "does not mandate comfortable prisons," and conditions imposed may be "restrictive and even harsh." *Rhodes,* 452 U.S. at 347, 349.  Adequate food is a basic human need protected by the Eighth Amendment. *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir. 1982).  However, prison food need not be "tasty or aesthetically pleasing," and it need only be "adequate to maintain health." *LeMaire v. Maass,* 12 F.3d 1444, 1456 (9th Cir. 1993);

*Keenan v. Hall*, 83 F.3d 1083, 1091 (9th Cir. 1996).

Although the Ninth Circuit has never decided what exact quantity of prisoner food is necessary to pass constitutional muster, other courts have established guidelines. *See, e.g., Green v. Ferrell*, 801 F.2d 765, 770-71 (5th Cir. 1986) (finding two meals a day sufficient if nutritionally and calorically adequate); *see also Sostre v. McGinnis*, 442 F.2d 178, 186, 193-94 (2d Cir. 1971) (finding diets of 2,800 to 3,300 calories per day constitutionally adequate); *Cunningham v. Jones*, 667 F.2d 565, 566 (6th Cir. 1982) (finding one meal a day for 15 days, where the meal contained 2,000-2,500 calories and was sufficient to maintain health, constitutionally adequate). It is clear, however, that even the complete denial of single meals on a few occasions is insufficient to support a claim of cruel and unusual punishment. *See e.g., Palmer v. Johnson*, 193 F.3d 346, 352 (5th Cir. 1999) ("[T]hat Palmer may have missed one meal ... does not rise to the level of a cognizable constitutional injury"); *Talib v. Gilley*, 138 F.3d 211, 214 n.3 (5th Cir. 1998) ("Missing a mere one out of every nine meals is hardly more than that missed by many working citizens over the same period."); *Wilkins v. Roper*, 843 F. Supp. 1327, 1328 (E.D. Mo. 1994) (denial of one meal does not give rise to constitutional violation).

Here, Plaintiff has failed to state a cruel and unusual punishment claim because he has failed to allege sufficient facts which show that he was denied sufficient food or nutrition necessary to maintain his health. *LeMaire*, 12 F.3d at 1456; *see also Hutto v. Finney*, 437 U.S. 678, 686-87 (1978) (when considering Eight Amendment challenges to the conditions of confinement, court should consider amount of time the prisoner was subject to the allegedly unconstitutional condition). Plaintiff has also failed to identify the Defendants responsible for this alleged deprivation.

### 7.    Count 7

In this final count, Plaintiff seeks to hold Defendant Eric Arnold, Chief of the Classification Services Unit, liable because he is the "highest ranking official." (FAC at 21.) There is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). Instead, "[t]he inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are

alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo v. Goode*,  423 U.S. 362, 370-71 (1976)).  In order to avoid the respondeat superior bar, Plaintiff must allege personal acts by each individual Defendant which have a direct causal connection to the constitutional violation at issue.  *See Sanders v. Kennedy*, 794 F.2d 478, 483 (9th Cir. 1986); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Supervisory officials may only be held liable for the allegedly unconstitutional violations of a subordinate if Plaintiff sets forth allegations which show:  (1) how or to what extent they personally participated in or directed a subordinate's actions, and (2) in either acting or failing to act, they were an actual and proximate cause of the deprivation of Plaintiff's constitutional rights.  *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978).  As currently pleaded, however, Plaintiff's First Amended Complaint fails to set forth facts which might be liberally construed to support an individualized constitutional claim against Defendant Arnold.

For all these reasons, Plaintiff's First Amended Complaint must be dismissed for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. § 1915(e)(2)(B).  Plaintiff will be provided the opportunity to file an Amended Complaint in order to correct the deficiencies of pleading identified by the Court.

III.    CONCLUSION AND ORDER

Good cause appearing, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's Motion to Apply CAL. CODE CIV. P. 352.1 [ECF No.  16] is **GRANTED**.

2.    Plaintiff's First Amended Complaint is **DISMISSED** without prejudice for failing to state a claim upon which relief may be granted.  *See* 28 U.S.C. § 1915(e)(2) & § 1915A(b).

3.    Plaintiff is **GRANTED** sixty (60) days leave from the date this Order is filed in which to file a Second Amended Complaint which cures all the deficiencies of pleading noted above.  Plaintiff's Amended Complaint must be complete in itself without reference to his original Complaint.  *See* S.D. CAL. CIVLR 15.1.  Defendants not named and all claims not re-alleged in the Amended Complaint will be considered waived.  *See King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987).  If Plaintiff fails to file an Amended Complaint within 60 days, this action

11

11cv2562 IEG (NLS)

shall remain dismissed without further Order by the Court.

   4.      The Clerk of Court is directed to mail a Court approved § 1983 form to Plaintiff.

DATED: July 26, 2012

_____
HON. IRMA E. GONZALEZ,
United States District Judge

12